# Thompson, Appellant, *v.* Philadelphia & Reading Railway Company.

*Negligence—Railroads—Crossing — Contributory negligence — "Stop, look and listen"—Nonsuit.*

A nonsuit was properly entered in an action for personal injuries against a railroad company sustained by plaintiff, resulting from his being struck by a train while he was attempting to cross railroad tracks in an automobile on a clear night, where it appears that the only stop made by plaintiff was 125 feet from the crossing, where it was impossible to see down the tracks, and that after observing a watchman wave a white lantern, which he mistook for a signal to go ahead, he proceeded at a rate of 20 miles an hour across the tracks, and failed to stop at a point where he could see, and was struck almost immediately after observing the train.

Argued Jan. 15, 1919. Appeal, No. 63, Jan. T., 1919, by plaintiff, from order of C. P. No. 3, Philadelphia Co., March T., 1916, No. 1296, refusing to take off nonsuit in case of David Thompson, Jr., v. Philadelphia & Reading Railway Company, a corporation. Before BROWN, C. J.,

MOSCHZ SKER, FRAZER, WALLING and KEPHART, JJ. Affirmed.

Action in trespass to recover damages for personal injuries. Before DAVIS, J.

At the trial the court entered a nonsuit in the following opinion:

The plaintiff was driving an automobile on Walnut street in the town of North Wales, Pennsylvania. He was injured by being struck by a locomotive on the tracks of the defendant company. The accident occurred February 18, 1915, at ten o'clock at night. It appears that the plaintiff was driving an automobile; that as he approached the tracks at the intersection of Walnut street he stopped in front of a hotel; he testified that he blew the horn of his automobile, and that he got a signal from the flagman or watchman to come ahead. I am inclined to think that is an assumption on his part, that it was a signal to go ahead, in view of the fact that he had stopped his automobile and that the light which was waved by the watchman at the crossing was a white light waved parallel to the street, Walnut street, at the point plaintiff stopped, and at the only stop he made, one hundred and twenty-five feet from the point where his automobile was struck, it was impossible, according to his testimony to see down the tracks of the railway company. He failed to stop when he did arrive at a point where he could see along the line of the defendant's track and where stopping would have been effective. On the contrary he proceeded at the rate of twenty miles an hour across the tracks; when he had crossed the track of a siding, between the rails of which and the rails upon which the train which struck the plaintiff was approaching, there was a space of about fifteen feet unoccupied by rails where he could and should have stopped and looked. There were no safety gates at this crossing at the time. I am brought to the conclusion that under the law the plaintiff should have stopped, looked and

listened where he could have seen the approaching train. Notwithstanding the fact that he might have misunderstood the signal of the person who was waving the lantern, such an act on the part of a watchman does not relieve the plaintiff of the legal duty to stop at a point where he could see whether or not there was an approaching train, and it is quite evident that the train was very near to the plaintiff, in view of his testimony that he could not stop after he saw the train before he was struck, that he was struck almost immediately. It was not raining or snowing or a bad night. The plaintiff testified it was clear. Following out the line of cases as I read them it was the duty of the plaintiff, before he attempted to cross, to bring his car to a stop and to have his car under such control that he could have stopped within fifteen or twenty feet when he was knowingly approaching a railroad crossing. I am of opinion that this case is ruled by the case of Earle v. Phila. & Reading Ry., 248 Pa. 193; Smith v. Penna. R. R. Co., 256 Pa. 501, and the later case of Reigner v. Penna. R. R. Co., 258 Pa. 257. In the latter case it was held: "It is the duty of a person about to cross railroad tracks to be observant so long as danger threatens; if between where the party stops and the tracks of the railroad the situation affords opportunity to discover an approaching train and injury results because of disregard of such opportunity the original act of stopping cannot operate to relieve the injured of the consequences of contributory negligence." So in the case at bar, there was sufficient space and sufficient time, when the plaintiff arrived at the point between the tracks the space referred to between the siding and the main line tracks upon which the approaching train was coming, to have stopped his automobile and to have seen the approaching train. As was said in Smith v. P. R. R. Co., 256 Pa. 501, "The plaintiff's own testimony clearly establishes that he saw the car almost at the instant he was struck consequently the conclusion is unavoidable that he failed to take proper precautions

for his safety. Though snow was falling at the time, and the plaintiff stated he could scarcely see the opposite side of the street, even this limited vision, considering the slow movement of the train, was ample to enable him to avoid the collision, had he stopped and looked as he testified he did. His admission that immediately before coming in contact with the car he saw its front and side, clearly indicates a failure on his part to look until too late, and that he walked directly in front of the moving train. Under such circumstances, it is useless for plaintiff to say he looked and listened and did not see the approaching train......which he could not have failed to both see and hear, had he taken such precautions for his safety as the circumstances required. In Carroll v. R. R., 12 W. N. C. 348, 349, this court said: 'The injury received by plaintiff was attributable solely to his own gross carelessness. It is vain for a man to say that he looked and listened, if, in despite of what his eyes and ears must have told him, he walks directly in front of a moving locomotive.' The same doctrine was applied in R. R. Co. v. Bell, 122 Pa. 58; Maryland v. Pittsburgh & Lake Erie R. R. Co., 123 Pa. 487; Blight v. Camden & Atlantic R. R. Co., 143 Pa. 10."

Under all the evidence I grant the motion for a nonsuit.

The court subsequently refused to take off the nonsuit. Plaintiff appealed.

*Error assigned* was refusal to take off the nonsuit.

*John J. McDevitt, Jr.,* with him *Harry A. Gorson,* for appellant.—The question whether the plaintiff stopped at a proper place before crossing should be left to the jury: Lonabaugh v. Pittsburgh Rys. Co., 250 Pa. 42; Milligan v. P. & R. R. Co., 261 Pa. 344.

*Wm. Clarke Mason,* for appellee.—This was such gross negligence and in such clear violation of the rule laid

down by this court, applicable to such circumstances, that the learned trial judge properly disposed of this case by entering the judgment of nonsuit: Siever v. Pittsburgh, Cin. & C. R. R. Co., 252 Pa. 1; Earle v. Phila. & Reading Ry. Co., 248 Pa. 193; Mankewicz v. Lehigh Val. R. R. Co., 214 Pa. 386; Kinter v. Penna. R. R. Co., 204 Pa. 497; Benner v. Phila. & Reading Ry. Co., 262 Pa. 307; Reigner v. Penna. R. R. Co., 258 Pa. 257.

PER CURIAM, February 17, 1919:

This judgment is affirmed for the reasons given by the learned trial judge below for entering the nonsuit.