# George, Appellant, *v.* Philadelphia Rapid Transit Co.

*Negligence—Street railways—Private crossing — Speed — Evidence—Warning—Headlight—Positive and negative testimony — Contributory negligence—Failure to look and listen.*

1. A motorman who knows of the existence of a private crossing along his route, is bound to take reasonable precaution to avoid injuring persons using it.

2. In an action against a street railway company for injuries sustained by a collision between a street car and a wagon at a private crossing, where the evidence of the motorman himself tended to show that he could have stopped the car in time to prevent the injury if he had been giving proper attention to his duties, the question of the mortorman's negligence is for the jury.

3. The testimony of a driver of a wagon hit by an electric car, that the car was without headlight, is not merely negative in character, where it appears that the driver was looking for an approaching car, and that his position enabled him to observe the headlight had it been lit.

4. Where the driver of a wagon drives out from the grounds of a property abutting on a highway and in passing by a private crossing over the tracks of a street railway, is struck by a street car, he is guilty of contributory negligence as a matter of law where it appears that he was familiar with the crossing, and that while he looked at the proper place, in one direction, he failed to look in the direction from which he knew that a car might come.

5. It is the duty of the driver of a vehicle about to cross a passenger railway on a public highway to look immediately before entering upon the track.

Argued January 7, 1926. Appeal, No. 119, Jan. T., 1926, by plaintiff, from judgment of C. P. No. 5, Phila. Co., June T., 1923, No. 5771, for defendant n. o. v., in case of Frank G. George v. Philadelphia Rapid Transit Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Trespass for personal injuries. Before SMITH, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $3,000 upon which judgment was entered for defendant n. o. v. Plaintiff appealed.

*Error assigned* was, inter alia, judgment n. o. v., quoting record.

*George C. Klauder,* for appellant.—Plaintiff was not guilty of contributory negligence: Rottmund v. R. R., 225 Pa. 410; McMahon v. Transit & Light Co., 280 Pa. 199; Muckinhaupt v. R. R., 196 Pa. 213.

*Charles J. Biddle,* for appellee, cited as to contributory negligence: Brown v. Traction Co., 14 Pa. Superior Ct. 594; Omslaer v. Traction Co., 168 Pa. 519; Keenan v. Traction Co., 202 Pa. 107; Ehrisman v. Ry., 150 Pa. 180; Wheelahan v. Traction Co., 150 Pa. 187.

OPINION BY MR. JUSTICE FRAZER, February 1, 1926:

In the month of May, 1923, about three o'clock in the morning, plaintiff, a driver of a milk wagon, after de-

livering milk at the residence of a customer on the east side of Old York Road in the suburbs of the City of Philadelphia, proceeded toward the main highway on a private drive leading from the highway to the dwelling house situated about 300 feet from the roadway. At the entrance to the property is a stone archway covered with vines and on each side of the archway is a low stone wall and a line of trees extending along the front of the property. A double line of defendant's trolley tracks is located on Old York Road, the northbound track being on the east side and the southbound track on the west side, with a paved portion for vehicular traffic in the center. The northbound track is laid within five feet of the wall at the street line of the premises in question. At the gateway the wall on each side of the private drive curved inward, the stone archway standing a distance of 19 feet back from the first car track. The dwelling house is situated a considerable distance back from the street on an elevated point. As plaintiff passed through the archway and was in the act of crossing the track he was struck by a freight car running northward, the collision resulting in the injuries for which this action is brought to recover compensation. The jury found for plaintiff, the court below, however, subsequently entered judgment for defendant non obstante veredicto on the ground that no negligence on the part of the motorman was shown, and that plaintiff was guilty of contributory negligence.

With respect to defendant's negligence, the motorman testified his car was traveling up-grade at a speed not exceeding ten miles an hour, and that he did not see plaintiff's team until it was on the track and his car within ten feet of it, at which time it was too late to avoid a collision. On cross-examination, he said he was looking ahead at the time and saw the heads of the horses first when three or four feet from the track, consequently the team was in plain view at the time the horses entered on the track, and until the wagon was

more than half across, at which time it was struck at the brakes, located in front of the rear wheels. The length of the horses is given as nine feet, with a space of three feet between them and the front part of the wagon, and the length of the wagon ten feet, a total of 22 feet. The distance from the horses' heads to the brake, assuming it to be the middle of the wagon, was 17 feet, and if the horses' heads were three feet from the rail when the motorman first saw them, this made a distance of 20 feet over which the wagon passed, going at the ordinary speed at which horses walk, while in plain view of the motorman. As the trolley was traveling ten miles an hour, it must, therefore, have been at least 50 feet from the team when the motorman first observed it in the act of entering on the track. The latter was evidently mistaken when he said the team entered on the track when he was ten feet distant and too late to avoid an accident. While we find no proof in the record as to the distance within which the motorman could have brought his car to a standstill, a distance of 50 feet would seem to be ample for that purpose where the car was moving up grade at the rate of ten miles an hour, if the motorman was giving proper attention to his duties which required him to be observant of the roadway ahead of him. There is no public crossing at the place, yet he knew of the existence of the private crossings along the route and was bound to take reasonable precaution to avoid injuring persons properly using them. On his own statement of fact it was for the jury to say whether he did not have ample opportunity to stop his car in time to avoid a collision had proper effort been made.

Plaintiff and another witness both testified the car was without headlight or other light. This testimony was contradicted by the motorman and the conductor of the car, both of whom said the headlight was burning. The court below concluded this testimony on behalf of plaintiff and his witness was merely negative and of no weight as against the positive testimony of the

motorman and conductor. Under the circumstances, the testimony of plaintiff, at least, was more than negative. He was looking for an approaching car and his attention was, therefore, directed to it, and his position enabled him to observe the headlight had it been lit. Such testimony, as this court has frequently held, is more than merely negative and sufficient to require submission to the jury.

Notwithstanding defendant's negligence we are obliged to conclude that plaintiff was guilty of contributory negligence which prevents recovery, and that the judgment entered by the court below was proper. Plaintiff testified as he approached the track, at the exit for the private drive and before he reached the archway, he testified he looked southward from a point where he could see 125 feet and saw no car approaching. As he proceeded under the archway his view up and down the track was limited to approximately 25 feet. As his team went forward and before the horses reached the track he looked northward and saw no approaching car. He did not look to the southward in the direction from which the car approached, until he was on the track, at which time he says he saw the car forty or fifty feet away and endeavored to avoid it by urging his horses forward. His own statement was that he "looked as soon as I could at the gate post, before my horses were on the track, too, and then I looked north. Then after my horses got out and I was across the track, with just the wagon on the track, I looked south and there the car was 40 or 50 feet away from me." It thus appears that in approaching the track he looked three times, first, while inside the gateway, when he looked southward, second, after he had driven through the gateway and as he approached the track, when he looked northward, and, third, when he was on the track, at which time he looked southward. He was familiar with the locality, having delivered milk there each morning for more than a year, and knew the cars ran northward on

the track immediately in front of the gateway. He accordingly did not look in the direction from which he was aware the car must approach, from the time before passing through the gateway until he was on the track. Although his view extended but a short distance to the southward while under the archway, this distance increased as he approached the track and by the simple act of leaning forward from his seat, before the horses entered on the track, he would have had a view for a distance sufficient to avoid the approaching car. It is a familiar rule that it is the duty of the driver of a vehicle about to cross a passenger railway constructed on a public highway, to look immediately before entering upon the track (Lessig v. Reading Transit & Light Co., 270 Pa. 299, 305, and cases cited), and there may be circumstances in which he is even bound to stop to take proper precautions for his safety: Omslaer v. Pittsburgh & Birmingham Traction Co., 168 Pa. 519. "The duty to look for an approaching car is an absolute duty, and failure to do so is negligence per se. This duty is not performed by looking when first entering the street, but continuous until the track is reached": Burke v. Traction Co., 198 Pa. 497, 499, and cases cited. It is quite evident in the present case that plaintiff did not perform his duty inasmuch as the only endeavor made to ascertain whether the track was clear after passing through the archway and before entering on the railway, was to the northward from which direction he had no reason to anticipate a trolley car would come. On his own statement he was guilty of negligence which prevents recovery.

The judgment is affirmed.