## Paul, Appellant, *v.* Philadelphia & Reading Railway Company.

*Negligence—Railroads—Contributory negligence—"Stop, look and listen" rule—Duty to listen.*

1. The unbending rule as to the duty of a traveler on a public highway, as he approaches a railroad crossing over it, is to stop, look and listen. He must listen as well as look, for conditions may be such that

though, when he stops at a proper place and looks, he cannot see a coming train, he yet must hear it if he listens. And if he then, in spite of what he hears, walks or drives on into almost instant collision with the train, he is as guilty of contributory negligence as if he had plainly seen its coming.

2. In an action to recover damages for personal injuries the court properly directs a verdict for the defendant railroad company where it appears that the plaintiff, a man of good hearing, while driving on a public road on a calm and peaceful night, with nothing to interfere with the noise made by the moving of railroad cars, stopped about thirty feet from a railroad crossing and then was struck while crossing the track by a train of twenty-eight coal cars, with the engine nearly in the middle, moving upgrade at the rate of four or five miles an hour, and where from the testimony of one of plaintiff's own witnesses it is clear that if he did not hear the train it was because he was not listening.

Argued Feb. 15, 1911. Appeal, No. 22, Jan. T., 1911, by plaintiffs, from judgment of C. P. Schuylkill Co., Nov. Term, 1905, No. 288, on verdict for defendant by direction of the court in case of Henry Paul, in his own right, and Edward Paul, by his father and next friend, Henry Paul, v. The Philadelphia & Reading Railway Company. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before BECHTEL, J.

The facts appear in the opinion of the Supreme Court. The court directed a verdict for the defendant.

*Error assigned* was in directing verdict for defendant.

*C. E. Berger*, with him *M. M. Burke*, for appellant.— The case was for the jury: Davidson v. Ry. Co., 171 Pa. 522; McNeal v. Ry. Co., 131 Pa. 184; Laib v. R. R. Co., 180 Pa. 503; Cromley v. R. R. Co., 208 Pa. 445; Beach v. R. R. Co., 212 Pa. 567; Ely v. Ry. Co., 158 Pa. 233; Howard v. R. R. Co., 219 Pa. 358; Rottmund v. R. R. Co., 225 Pa. 410; Bickel v. R. R. Co., 217 Pa. 456; Sloan v. Ry. Co., 225 Pa. 52.

*John F. Whalen,* for appellee, cited: Holden v. R. R. Co., 169 Pa. 1; Gleim v. Harris, 181 Pa. 387; Gangawer v. R. R. Co., 168 Pa. 265; Mulvaney v. Pittsburg Rys. Co., 213 Pa. 343; Blotz v. R. R. Co., 212 Pa. 154; Dryden v. R. R. Co., 211 Pa. 620; Yevsack v. R. R. Co., 221 Pa. 493; Moose Brewing Co. v. R. R. Co., 36 Pa. Superior Ct. 549; Phila., Wilm. & Balt. R. R. Co. v. Stinger, 78 Pa. 226; Walsh v. R. R. Co., 222 Pa. 162; Anspach v. Ry. Co., 225 Pa. 528.

OPINION BY MR. JUSTICE BROWN, April 10, 1911:

The unbending rule as to the duty of a traveler on a public highway, as he approaches a railroad crossing over it, is to stop, look and listen. He must listen as well as look, for conditions may be such that though, when he stops at a proper place and looks, he cannot see a coming train, he yet must hear it if he listens. And if he then, in spite of what he hears, walks or drives on into almost instant collision with the train, he is as guilty of contributory negligence as if he had plainly seen its coming. "The law requires a listening, as well as a looking, for a coming train, and obscuration of vision is no defense against a failure to listen:" Penna. R. R. Co. v. Mooney, 126 Pa. 244. The present case is an apt illustration of the wisdom of this rule and calls imperatively for its application.

Between eight and nine o'clock on a dark and foggy night, in the fall of the year, Edward Paul, the injured plaintiff, and a companion were driving on a public road, with which they were familiar, and, according to their testimony, stopped about thirty feet from the point where the track of the defendant company crossed the road and looked and listened for an approaching train. It is admitted that where they stopped, their view in the direction from which the train that struck them was coming was obstructed by a building, but we need not dwell upon this in passing upon their alleged contributory negligence, for both testified that there was no light upon the train, and,

if they were to be believed as to this, in the face of positive testimony to the contrary, they could not have seen the train if they had stopped and looked at a point beyond the obstruction. While, from their testimony, the failure of the railroad company to have a headlight on its train prevented their seeing its approach, they have shown naught to excuse them for not having heard its coming when it was almost upon them, as they stopped within thirty feet of the track. The appellant admits that his hearing was good, that the night was calm and that there was nothing to prevent his hearing any noise at the time he and his companion stopped to listen for a coming train. Under the undisputed facts about to be stated the only possible conclusion to be reached is that they must have heard the notice that a train was about to pass over the crossing which they were approaching, and, in the face of such notice—which the law conclusively presumes they heard—it is idle for them to say that they did not hear and that the collision was not due to their own heedlessness.

The train which collided with the team consisted of an engine and twenty-eight empty coal cars. The engine was not at the head of the train, but was pushing ten of the cars and pulling the remaining eighteen. It was approaching the crossing on an upgrade, moving at the rate of four or five miles an hour, and the testimony of the engineer, the fireman, the brakeman and another witness was that about 1,500 feet west of the crossing the whistle was sounded to give notice of its approach. The negative testimony of appellant and his witness was that they did not hear the whistle; but we need not discuss the weight to be given to the positive testimony of the four witnesses, for, on undisputed evidence, the plaintiff and his companion must have heard the coming of the train if they were giving the slightest attention to the duty resting upon them to listen. The twenty-eight cars, with the engine nearly in the middle of them, were coming toward the crossing on an upgrade, and the night was calm and

peaceful, with nothing to interfere with the noise made by the moving of the cars. In Hess v. Williamsport & North Branch Railroad Co., 181 Pa. 492—a somewhat similar case—the situation is thus aptly described: "The fires under the boiler were doing their work; the stroke of the lever was kept up; the exhaust of the engine did not cease; the rumbling of the wheels on the rails was not muffled." In the face of these conditions the appellant testified that they did not hear "a sound of a train approaching," and his companion corroborated him. In the light of human observation and experience, the learned trial judge properly refused to allow a jury to believe them. If they truthfully testified that they did not hear a sound, it was because they were not listening, but were intent on something else when their duty was to listen, and the consequences of what immediately followed their disregard of that duty—which they admit they knew was resting upon them—are not to be visited upon the defendant.

From the testimony of one of plaintiff's own witnesses—George Hoffman—it clearly appears that, if he did not hear the train, it was because he was not listening. That witness testified that, though he was seated in an office twice as far from the crossing as the point at which the plaintiff and his companion stopped to look and listen, he heard the train coming. After the plaintiff's admission that his hearing was good, that the night was perfectly calm and there was nothing to interfere with his hearing any noise as he sat in an open part of the wagon, he was asked to explain why he had not heard the approach of the train, and his answer was that the rattling of the tailboard of the wagon might have prevented his hearing it. When the wagon stopped there could have been no such rattling, and while it was in motion, with the horse walking, there could have been little, if any. When still further pressed on his cross-examination, he admitted that he could not say positively that the tailboard had rattled, and, if it had not, he was unable to account for his failure to hear the noise made by the train. The collision oc-

curred the instant the front feet of the horse were upon the track, and, as it conclusively appears that it would have been avoided if the plaintiff had been exercising his sense of hearing, he has himself to blame for what befell him.

The assignment of error is overruled and the judgment is affirmed.