## Moore, Appellant, v. Erie Rys. Co.

Argued May 11, 1932. Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

574

*W. P. Gifford,* of *Gunnison, Fish, Gifford & Chapin,* with him *Marsh & Eaton* and *Grant A. Walker,* for appellant.—A plaintiff can only be charged with contributory negligence when it clearly appears that the proximity of the car was so close that a person of ordinary prudence would not have attempted to cross the street car tracks until the car had made the crossing or had stopped. Plaintiff was not bound to anticipate the negligent management of the street car: Emmelt v. Transit Co., 89 Pa. Superior Ct. 417; Bowman v. Stouman, 292 Pa. 293; Goldberg v. Traction Co., 299 Pa. 79; Schaeffer v. Transit Co., 302 Pa. 220; Kilpatrick v. Transit Co., 290 Pa. 288; Wagner v. Transit Co., 252 Pa. 354; Phila. & R. Ry. Co. v. Hummell, 44 Pa. 375; Knobeloch v. Ry. Co., 266 Pa. 140; Kuhns v. Traction Co., 290 Pa. 303; Tomlinson v. Elec. Co., 301 Pa. 72; Keck v. Ry., 271 Pa. 479.

*Charles H. English,* of *English, Quinn, Leemhuis & Tayntor,* for appellee.—The evidence establishes that the plaintiff was guilty of contributory negligence as a matter of law for his failure to observe defendant's street car approaching from his right: Massinger v. R. R., 300 Pa. 6; Tull v. B. & O. R. R., 292 Pa. 458; George v. Transit Co., 285 Pa. 362; Wheelahan v. Traction Co., 150 Pa. 187; Smyth v. Traction Co., 263 Pa. 511; Weber v. Ry., 300 Pa. 351.

OPINION BY MR. JUSTICE DREW, June 30, 1932:

The plaintiff appeals from the entry of a judgment of compulsory nonsuit in the court below. The action is in trespass, and arose out of a collision on July 5, 1929, between an automobile owned and operated by the plaintiff, James J. Moore, and a street car of the defendant, Erie Railways Company. The sole question raised is whether or not the court below was in error in its conclusion that plaintiff was guilty of contributory negligence as a matter of law.

In view of the fact that a compulsory nonsuit was entered, we must, in reviewing the evidence, consider all facts and proper inferences to be drawn therefrom in the light most favorable to plaintiff: Kilpatrick v. P. R. T. Co., 290 Pa. 288; Yentis v. Mills, 299 Pa. 25. This accident occurred on a clear day, about one o'clock in the afternoon. Plaintiff, accompanied by his wife, was driving west on the West Ridge Road, about 2,000 feet from the westerly line of the City of Erie. At that place the defendant company maintained a single track railway upon a private right-of-way, twenty-five feet north of and parallel with this road; the track was five feet wide. Between the road and track was a row of maple trees. The plaintiff turned to the right, into Lowell Avenue, a cinder road which crossed the track, traveling at a speed of twelve to fifteen miles an hour. He was very familiar with this crossing, having used it several times a day for months. After making the turn, he glanced to his right, the direction from which the car came, and could see between the trees a distance of 200 feet along the track. He saw no car approaching. He drove to a point two or three feet from the south or nearer rail of the track and stopped; he was then seated ten or eleven feet from that rail. He leaned forward about a foot and again looked to his right, and could see a distance of only 100 feet, his vision being obstructed by a tree located six and one-half feet south of the southern rail of the track. He did not see or hear the car

approaching. He then looked to the left, and without again looking to his right, proceeded to cross the track, and had gone a distance of seven or eight feet at a speed of two to four miles an hour when he heard "some tremendous racket or something," looked to his right and saw the street car almost upon him, only forty feet away, traveling at a speed of forty miles an hour. The front wheels of the automobile were two or three feet beyond the track—ten or eleven feet from the starting point—when it was struck by the car, and carried a distance of approximately 100 feet. Plaintiff and his wife were injured, the latter so seriously that she died, and his automobile was destroyed. He brought this suit for damages for the death of his wife, compensation for his own injuries, and for the value of his automobile.

The rule in this state is inflexible that before crossing a street railway track, a traveler upon the highway must continue to look and listen until he has reached the track: Omslaer v. Traction Co., 168 Pa. 519; Burke v. Union Traction Co., 198 Pa. 497; George v. P. R. T. Co., 285 Pa. 362; Smith v. Lehigh Valley Transit Co., 296 Pa. 212. Plaintiff testified that after once glancing to his right, where his vision was obscured, so that he could see but one hundred feet, he did not again look in that direction. Particularly, under the circumstances here present, where his view of the track would have been immediately and constantly increased as he went forward, he was under a duty to continue to look in both directions: Massinger v. Reading R. R. Co., 300 Pa. 6; Gelwicks v. Penna. R. R. Co., 301 Pa. 68. The head can be turned in a fraction of a second, and had plaintiff done this he would have seen the approach of the car and avoided the accident. He was bound to keep a vigilant outlook, because his vision was cut very short by the obstruction of the tree, and this on his own testimony he did not do. If he had continued to look, and had leaned forward an additional foot, as he admits he could have done, he would have been able to see a dis-

tance of 600 to 800 feet along the track, and then certainly would have seen the approaching car. He testified he proceeded across the track at a rate of two to four miles an hour, and that he was struck before he had gone more than ten or eleven feet. At the rate of three miles an hour he was traveling 4.4 feet per second, so that the accident occurred about two and one-half seconds after he had started. Accepting his own estimate that the street car was traveling forty miles an hour, or 58.7 feet a second, it was less than 150 feet away when he started to make the crossing. Under these circumstances, undoubtedly he could have seen the car before he reached the track. His frank admission that he did not look at all after he started, and did not see the car until it was only forty feet away, conclusively indicates that he did not perform his duty. He stopped at a place where visibility was markedly reduced, and contented himself with what he termed a "glance" to his right. It was his duty to put himself in a position to obtain a clear view of the track, as he might have done by proceeding a few feet further. Having voluntarily stopped at a place where a tree obstructed his view so that he could see but a very short distance, he cannot thereby excuse his failure to see the oncoming car: Moses v. Northwestern Penna. Ry. Co., 258 Pa. 537; Lessig v. Reading T. & L. Co., 270 Pa. 299; Gelwicks v. Penna. R. R. Co., supra.

Furthermore, plaintiff was bound to listen as well as to look: Omslaer v. Traction Co., supra; Smathers v. Ry. Co., 226 Pa. 212; Paul v. P. & R. Ry. Co., 231 Pa. 338; Ervay v. Waverly S. & A. Traction Co., 240 Pa. 440; Rhodes v. Penna. R. R. Co., 298 Pa. 101; Gallagher v. P. R. T. Co., 103 Pa. Superior Ct. 232. He testified that, although the window next him in the car was open and there was nothing to interfere with his hearing, he failed to hear the approaching car until it was within forty feet of him, when his attention was called to it by "some tremendous racket." His testimony

shows, beyond a doubt, that he could not have been listening, or he would have heard the approach of the street car before he attempted to cross the track. The fact that the car was making "some tremendous racket" when he first heard it, indicates conclusively that it was making a loud noise prior to that time, and that he would have heard it if he had been listening. It is a matter of common knowledge that the sound of moving interurban electric cars, such as this, is audible for a distance far greater than forty feet, and does not burst upon the hearing suddenly, like a thunderclap. Plaintiff should have heard this car, even though, when his vision was obstructed by the tree to his right, he could not see it.

Plaintiff drove upon the track knowing that there might be, a hundred feet away, a car which he could not see approaching the crossing. He did not look at all in the direction from which the car came after he started to cross, and he could not have been listening or he would have heard the car before going on the track. He did not exercise any care under the circumstances to avoid an accident; in so doing he must be considered as having voluntarily assumed the risk to which he exposed himself. The defendant's motorman was unquestionably negligent in not having his car under control at the crossing, as is indicated by the fact that he did not stop it for a hundred feet after the accident. But since, as a result of his own negligence, plaintiff did not see or hear the car before he drove upon the track, the accident was a result, in part at least, of his own carelessness, for which reason he cannot recover damages.

Judgment affirmed.